## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| VICTOR LAMONT JORDAN, SR.,<br>    *Plaintiff*,<br><br>v.<br><br>DEPARTMENT OF CORRECTIONS, ET AL.<br>    *Defendants*. | No. 3:24-cv-298 (VAB) |

## INITIAL REVIEW ORDER

Victor Jordan ("Plaintiff"), a sentenced inmate housed at Cheshire Correctional Institution ("Cheshire") in the custody of the Connecticut Department of Correction ("DOC"), filed this civil rights Complaint under 42 U.S.C. § 1983.[1] Compl., ECF No. 1 (Mar. 4, 2024) ("Compl.").

Mr. Jordan asserts violations of his rights under the United States Constitution, while he was housed at DOC's Corrigan-Radgowski Correctional Center ("CRCC"), against DOC, Commissioner Quiros, Regional Medical Supervisor Dr. Kocienda, ADA Coordinator Colleen Gallagher, External Affairs Officer Karen Martucci, and the following DOC employees who work at CRCC: Lieutenant Wilson, Lieutenant Bowers, Acting Warden Oles, Acting Warden Perez, Lieutenant Pearson, RCOO Sanchez, Correction Officer Dillard, Correction Officer Flemming, Lieutenant Bellamare, Correction Officer Fiore, Correction Officer Silva, Correction Officer

---

[1] Information on the Department of Correction ("DOC") website shows that Mr. Jordan was sentenced on December 4, 2008 to a term that has not yet expired, and that he is currently housed at Cheshire. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=339978 (last visited Mar. 19, 2024). *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425 (KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

Werner, Correction Officer Doe 1, Correction Officer Doe 2, Correction Officer Doe 3, Correction

Officer Doe 4, Dr. Gange (or Gagne), Correction Officer York, and Dr. Grande.

In addition, Mr. Jordan names as Defendants unspecified staff who work in the DOC

mental health or medical units as "Mental Health Personnel Clinicians, Provider Corrigan C.C."

and "Medical Dep't. APRN; RN; Drs; Providers Corrigan C.C." Mr. Jordan asserts his claims

against Defendants in their individual and official capacities.

Rule 10 of the Federal Rules of Civil Procedure states that "[t]he title of the complaint must

name all the parties." Fed. R. Civ. P. 10(a). Accordingly, the Court only considers whether Mr.

Jordan has alleged plausible claims against the individuals named in the case caption.

In addition, the Prison Litigation Reform Act ("PLRA") requires that federal courts review

complaints brought by prisoners seeking relief against a governmental entity or officer or

employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss

the Complaint, or any portion of the Complaint, that is frivolous or malicious, fails to state a claim

upon which relief may be granted, or seeks monetary relief from a defendant who is immune from

such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the Complaint and conducted

an initial review of the allegations therein under 28 U.S.C. §1915A.

For the following reasons, the case shall proceed on Mr. Jordan's individual capacity

claims for damages for:

(1) an Eighth Amendment violation based on excessive force against Lieutenant Wilson

and Officers Silva and Fiore;

(2) an Eighth Amendment violation based on deliberate indifference to his inadequate

access to out-of-cell exercise against Acting Warden Perez;

2

(3) an Eighth Amendment violation based on deliberate indifference to Mr. Jordan's health and safety against Lieutenant Wilson and Officers Silva and Fiore;

(4) an Eighth Amendment violation based on deliberate indifference to Mr. Jordan's mental health needs against Officers Dillard, Flemming, and York;

(5) a Fourth Amendment violation against Lieutenant Wilson and Officers Silva and Fiore; and

(6) State law assault and battery claims against Lieutenant Wilson and Officers Silva and Fiore.

All allegations and claims that do not relate to, or arise from, occurrences on June 26, 2023 are **SEVERED** as **MISJOINED** in this action. Mr. Jordan must pursue such claims in separate actions. *See* Fed. R. Civ. P. 20 & 21.

Mr. Jordan's other Eighth Amendment claims are **DISMISSED**. Mr. Jordan's claims about deprivations of his right to court access and rights under the First, Fifth, and Fourteenth Amendments and PAIMI are **DISMISSED**. Mr. Jordan's official capacity claims are **DISMISSED**. Mr. Jordan's claims of state statutory law are **DISMISSED** under 28 U.S.C. § 1367(c).

Defendants DOC, DOC Commissioner Quiros, Dr. Kocienda, ADA Coordinator Gallagher, External Affairs Officer Martucci, Lieutenant Bowers, Acting Warden Oles, RCOO Sanchez, Lieutenant Bellamare, Lieutenant Pearson, Officer Werner, Dr. Gagne, Dr. Grande, Officer Doe 1, Officer Doe 2, Officer Doe 3, Officer Doe 4, "Mental Health Personnel Clinicians, Provider Corrigan C.C." and "Medical Dep't. APRN; RN; Drs; Providers Corrigan C.C." are all **DISMISSED** from this action.

I.      **Factual Allegations**

The Court does not include herein all of the allegations from the Complaint but summarizes only facts to provide sufficient context for this initial review.

On May 23, 2023, Mr. Jordan allegedly was transferred from Garner to CRCC. He claims that this transfer occurred in order to prevent him from grieving his conditions of confinement. Mr. Jordan states that while he was housed at CRCC, he was denied the ability to exercise outside of his cell.

On June 26, 2023, Mr. Jordan allegedly was on tier recreation and walked to the corner of the unit where inmates work out. On that day, Officer Dillard allegedly informed Mr. Jordan that he was not allowed to exercise in the unit. Mr. Jordan allegedly advised Officer Dillard that he needed to work out physically for his mental and physical health needs. He allegedly indicated that Officer Dillard could call mental health staff for him and could issue him a disciplinary report if he had concerns about Mr. Jordan's exercising. Mr. Jordan allegedly continued to exercise but did not exhibit any hostility or threat toward Officer Dillard.

Officers Dillard and Flemming allegedly requested assistance from Officer York. After Mr. Jordan explained that he needed to see mental health staff, Officer York allegedly asked him about personal information protected under Health Insurance Portability and Accountability ("HIPAA")[2] in the presence of other inmates. He allegedly stated that he just wanted to see mental health staff and would not answer such questions. Officers Dillard, Flemming, and York allegedly refused to call mental staff for him.

---

[2] To the extent Mr. Jordan claims violation of his HIPAA rights, such claim is not plausible. HIPAA does not create a private right of action and cannot support a claim under section 1983. *See Rogers v. Rensselaer Cnty. Sheriff's Dep't*, No. 1:14-CV-01162(MAD/TWD), 2015 WL 4404788, at *7 (N.D.N.Y. July 17, 2015) ("It is well established that, because there is no private right of action under HIPAA, a violation of the Act cannot serve as the basis of a § 1983 claim.") (citing cases).

Mr. Jordan allegedly wanted to return to his cell and asked the officers to open the cell door. Officer Flemming allegedly stated that Mr. Jordan could not return to his cell because he needed to see the lieutenant in the hall. At that moment, Lieutenant Wilson allegedly arrived in the unit and the correction officers informed him that Mr. Jordan refused to stop exercising.

Lieutenant Wilson allegedly ordered Mr. Jordan to turn around and stand against the wall and informed him that he would be sent to segregation for disobeying a direct order. Mr. Jordan allegedly questioned whether he could be placed in the Restrictive Housing Unit for that offense. Lieutenant Wilson allegedly responded that Mr. Jordan was questioning his authority regarding the basis of his segregation decision. Mr. Jordan allegedly requested that Lieutenant Wilson use a camcorder to document the incident and argued with Lieutenant Wilson about the use of camcorder. Mr. Jordan allegedly advised that he wanted to hold the officers accountable if they were going violate the Protect Act and the Officer Accountability Act. He allegedly claimed that Lieutenant Wilson acted in violation of DOC rules and the Protect Act.

Four other officers allegedly were present and indicated that they were disappointed with Lieutenant Wilson's segregation decision.

After he arrived at the medical unit, Mr. Jordan allegedly informed the staff that his request for mental health assistance was denied while he was in the unit and that his Restrictive Housing Unit placement for his offense was a violation of the Protect Act (Bill 459). When mental health staff arrived, Mr. Jordan allegedly said that he was likely to commit self-harm due to his anxiety. A mental health clinician allegedly placed him on Behavior Observation Status ("BOS"). He allegedly informed the clinician that he needed extra bedding for his back as he was in constant pain. However, Mr. Jordan allegedly was not provided with any extra bedding.

Mr. Jordan allegedly was later placed in his RHU cell, where he banged his head on the

cell door and then woke up with extreme pain his right shoulder and back. Someone allegedly had placed ice on his head. Mr. Jordan allegedly realized that he was unable to move his arms and legs due to his right shoulder pain. Mr. Jordan allegedly was on four-point restraints strapped to a flat surface. He allegedly later found out that he had been dragged from the floor of his cell to the four-point restraints, and that Officers Fiore and Silva allegedly were involved with moving Mr. Jordan from his cell to four-point restraints. Mr. Jordan claims that DOC's mental health and medical unit staff are responsible for permitting Officers Silva and Fiore to drag him—while he was unconscious and naked—to the stationary restraints for no legitimate reason.

Mr. Jordan allegedly complained to a nurse about his back and shoulder pain. She allegedly indicated he would soon be able to change position. Two hours later, Lieutenant Wilson allegedly returned for a "change of motion" and to determine if Mr. Jordan needed to use the bathroom. When he finished using the bathroom, Mr. Jordan allegedly overheard Lieutenant Wilson describing him as noncompliant. Mr. Jordan allegedly later learned that Lieutenant Wilson was not permitted to restrain him again. Mr. Jordan allegedly was, however, placed back in restraints for another four hours and then placed on BOS in a cell.

Mr. Jordan allegedly later spoke with Lieutenant Pearson about the non-handicap/disability accessible showers and about Lieutenant Wilson's conduct and his violation of the Protect Act by placing him in the RHU for an infraction. Lieutenant Pearson allegedly responded by advising Mr. Jordan to plead to guilty to the disciplinary report charges or he would "work it" so that Mr. Jordan stayed in the RHU for fifteen more days.

On June 29, 2023, Mr. Jordan allegedly pleaded guilty under duress to the charges of making threats and acting with flagrant disobedience. Mr. Jordan allegedly received five days of punitive segregation.

On the date of Mr. Jordan's RHU release, Officer Werner allegedly apologized to Mr. Jordan for Lieutenant Wilson's wrongful conduct to place him in restraints for the second time.

Mr. Jordan alleges that he submitted an inmate request to Warden Martin about his confinement conditions at CRCC (including the clear white acrylic covering on the windows); the rules at CRCC that differ from other facilities; and his mental health issue. Mr. Jordan's level two grievance was denied by Acting Warden Perez, and his grievance appeal was denied by District Administrator Rodriguez on allegedly false grounds.

Mr. Jordan alleges that he filed other administrative grievances concerning his First, Eighth and Fourteenth Amendment rights, Defendants' failure to afford him contact visits, and Defendants' failure to provide him the opportunity for one hour per day of exercise in the gym or his housing unit or outdoor recreation. Warden Perez allegedly denied this grievance, and the District Administrator allegedly denied this grievance appeal. Mr. Jordan allegedly provided a series of allegations describing his grievance filings concerning inaccessible showers, need for reasonable accommodations (including medical devices for his sleep, and Achilles Heel) and violations of his disability rights; denial of exercise and being placed in segregation for a nonviolent offense; violations of DOC directive and Department of Justice regulations; being housed with unsentenced detainees; inmate requests detailing mental health staff failures, his having to carry heavy property up and down stairs, inability to participate in intramurals or to work out his Achilles heel, his need for diagnostic tests, his damaged kidney, spinal injury and back pain, retaliation, and false imprisonment. Mr. Jordan also alleges that DOC made revisions to its directives regarding grievance filing without affording notice or posting copies for the inmates.

## II.      DISCUSSION

Mr. Jordan asserts violations of his rights under 42 U.S.C. § 1983 for alleged violations of his First, Fourth, Fifth, Eighth, and Fourteenth Amendment; the Americans with Disabilities Act; the Rehabilitation Act; the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"); and state law.

### A.      Misjoined Claims

Federal Rule of Civil Procedure 20(a)(2) permits joinder of multiple defendants in one action if: (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences"; and (2) "any question of law or fact common to all defendants will arise in the action." The Court may "drop a party" or "sever any claim against a party" that it finds to be improperly joined. Fed. R. Civ. P. 21.

Under the first requirement of Rule 20(a), the determination of whether something involves the same "transaction" or "occurrence" is conducted on a case-by-case basis. *Dixon v. Scott Fetzer Co.*, 317 F.R.D. 329, 331 (D. Conn. 2016) ("What will constitute the same transaction or occurrence under the first prong of Rule 20(a) is approached on a case by case basis." (quoting *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008))). Whether claims arise out of the same transaction depends on the logical relationship between the claims and whether the "essential facts" of the claims "are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978). The same transaction requirement "means that there must be some allegation that the joined defendants conspired or acted jointly." *Arista Records LLC v. Does 1-4*, 589 F. Supp. 2d 151, 154 (D. Conn.

2008) (internal quotation marks omitted). The second requirement—that a question of law or fact common to all defendants will arise in the action—is met where "the court finds that there is 'substantial' overlap in questions of law or fact across the claims." *Ardolf v. Weber*, 332 F.R.D. 467, 479 (S.D.N.Y. 2019).

As an initial matter, the Court concludes that Mr. Jordan has included unrelated claims that are misjoined in a single complaint.

Mr. Jordan's Complaint primarily asserts claims arising from the denial of exercise and alleged mistreatment on June 26, 2023. But Mr. Jordan also appears to assert allegations unrelated to his claims about exercise deprivation and his mistreatment on June 26, 2023. Mr. Jordan's allegations indicate complaints about an alleged denial of disability accessible showers and other violations of his disability rights; several instances of inadequate medical and mental health treatment on occasions not related to the incident on June 26, 2023; conditions of confinement and being detained with unsentenced inmates; DOC violations of directives and unspecified DOJ regulations; and DOC failures or interference with his grievance procedures.

Essentially, Mr. Jordan seeks to include several different lawsuits in this single action based on factual predicates that are unrelated to the events alleged to have occurred on June 26, 2023. Judicial economy will not be facilitated by retaining all of the claims in a single action as all of claims do not arise from the same transactions and occurrences as discovery and trial would be hindered by the necessity for several different sets of evidence and separate proofs.

Accordingly, the Court will sever and dismiss without prejudice: (1) claims of disability discrimination, and (2) any federal or constitutional claims arising from factual allegations that do not concern his denial of exercise and the allegations about his alleged mistreatment on June 26, 2023. *See Jusino v. Quiros*, No. 3:21-CV-620 (SRU), 2021 WL 5111908, at *4 (D. Conn.

Nov. 3, 2021) (severing count based on events that were unrelated to events underlying other counts of the complaint). If Mr. Jordan wishes to pursue his claims against DOC officials concerning these additional complaints, he must do so in separate lawsuits.

**B.     Claims under 42 U.S.C. § 1983 Arising on June 26, 2023**

 Section 1983 "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999). The Court first considers whether Mr. Jordan has alleged any plausible claims against Defendants in their individual capacities.

For any claim seeking monetary damages from a defendant under Section 1983, Mr. Jordan must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983"). This is true with respect to supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020). Thus, a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Id.*

**1.     DOC as a Defendant**

Mr. Jordan cannot assert any plausible claim under 42 U.S.C. § 1983 against DOC because neither a state, a state agency, nor a division of a state agency is a "person" subject to suit under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (state and state agencies not persons within meaning of 42 U.S.C. § 1983).

Accordingly, DOC will be dismissed as a Defendant.

10

2.      **The Personal Involvement Requirement**

Mr. Jordan asserts as Defendants unspecified medical and mental health staff referred to

as "Mental Health Personnel Clinicians, Provider Corrigan C.C." and "Medical Dep't. APRN;

RN; Drs; Providers Corrigan C.C."; and he alleges facts about conduct by unidentified medical

or mental health staff. Mr. Jordan must, however, provide allegations identifying how each

particular defendant participated in the alleged constitutional violation. *See Torres v. Off. of*

*Adult Prob.*, No. 3:22-cv-883 (SALM), 2023 WL 319233, at *5 (D. Conn. Jan. 19, 2023) (noting

allegations referring only to "Defendants" fail to specifically identify which defendant

participated in the alleged constitutional violation).

Accordingly, the Court will dismiss as not plausible the Defendants described as "Mental

Health Personnel Clinicians, Provider Corrigan C.C." and "Medical Dep't. APRN; RN; Drs;

Providers Corrigan C.C."

In addition, the Court could not discern any facts alleged in the Complaint, describing the

direct personal involvement of the following Defendants relating to the denial of exercise on

June 26, 2023: Commissioner Quiros, Dr. Kocienda, ADA Coordinator Gallagher, Officer

Martucci, Lieutenant Bowers, Acting Warden Oles, RCOO Sanchez, Lieutenant Bellamare, Dr.

Gagne, Dr. Grande, Officer Doe 1, Officer Doe 2, Officer Doe 3, and Officer Doe 4. Mr. Jordan

allege that Officer Werner apologized to him about Lieutenant Wilson's conduct, but he alleges

no facts to suggest that Officer Werner participated or failed to intervene in a violation of Mr.

Jordan's rights.

Although Mr. Jordan alleges that he sent grievances to many of these Defendants, a

defendant's "'mere knowledge" does not amount to that defendant's violation of the

Constitution. *Tangreti*, at 616–17. Generally, an allegation that a supervisory defendant—such as

11

Warden Oles or Commissioner Quiros—denied a plaintiff's a grievance is insufficient to establish that defendant's personal involvement in a constitutional violation. *See Taylor v. Small*, No. 22-CV-2762 (NSR), 2024 WL 1605066, at *5 (S.D.N.Y. Apr. 11, 2024) (stating allegation that supervisory defendant received and denied plaintiff's grievances was insufficient to support an Eighth Amendment violation where there was no indication defendant could have remedied the wrong); *Thomas v. Morley*, No. 20 Civ. 7520, 2022 WL 394384, at * 6 (S.D.N.Y Feb. 9, 2022) (no personal involvement where defendants allegedly received grievances and complaints). Mr. Jordan also alleges a list of his administrative remedies but fails to provide factual allegations to support an inference that any of these Defendants had direct personal involvement in any alleged violation of his constitutional rights.[3]

Accordingly, absent such facts to suggest any of these Defendants' direct involvement in violation of Mr. Jordan's rights arising from the events on June 26, 2023,[4] Mr. Jordan's claim for damages under Section 1983 against them will not proceed.[5]

---

[3] To the extent that Mr. Jordan claims any of these Defendants violated his procedural due process rights by acting on his grievances improperly, or interfering with his administrative remedies process, Mr. Jordan has no constitutional right to have his grievances handled properly. *Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (explaining that "neither state policies nor state statutes . . . create federally protected due process entitlements to specific state-mandated procedures.") (internal quotation omitted); *Kalican v. Dzurenda*, No. 3:12-cv-1009 (SRU), 2015 WL 1806561, at *6 (D. Conn. Apr. 21, 2015) (holding that inmates have no right to have grievance investigated or grievance procedures followed).

[4] A plaintiff may not rely on exhibits in lieu of alleging facts in a complaint to state a claim against a defendant. *See Rahim v. Barsto*, 2022 WL 2704102, at *5 (D. Conn. July 12, 2022) (citing Fed. R. Civ. P. 8 and noting that plaintiff could not rely on exhibits to state deliberate indifference claim); *see also Walker v. Pastoressa*, 2022 WL 3716742, at *5 (E.D.N.Y. Aug. 29, 2022) (noting plaintiff may not rely on exhibits to satisfy Rule 8's requirement to provide a short and plain statement).

[5] To the extent he asserts a claim of conspiracy between Defendants, Mr. Jordan cannot allege a plausible conspiracy claim under Section 1983 in solely conclusory terms. *See Storck v. Suffolk Cnty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 940 (E.D.N.Y. 1999) (for Section 1983 conspiracy claim, conspiracy allegations can be neither vague nor conclusory, but must "allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy"); *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) ("[C]onclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights" are insufficient.").

3.      **The Eighth Amendment Excessive Force Claim**

Mr. Jordan's Complaint raises concerns about the use of excessive force in violation of the Eighth Amendment. In order to adequately allege an Eighth Amendment excessive force claim, Mr. Jordan must show that the force employed by a Defendant was not "applied in a good-faith effort to maintain or restore discipline" but was done "maliciously or sadistically to cause harm," and that the harm done was objectively serious enough to violate Mr. Jordan's constitutional right to be free from such harm. *See Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000) ("In an excessive-force case, whether conduct was 'wanton' turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992))).

The use of restraints does not violate the Eighth Amendment unless it lacks penological justification, is grossly disproportionate, or involves the unnecessary and wanton infliction of pain. *See Delgado v. Bezio*, 2011 WL 1842294, at *7 (S.D.N.Y. May 9, 2011). Here, Mr. Jordan alleges that he was placed in segregation after he continued to exercise on June 26, 2023. These allegations are sufficient to raise an inference that Lieutenant Wilson's order to place him in segregation for continuing his work out on June 26, 2023, may have exceeded the amount of force necessary to restore order under the circumstances, and thereby, lacked a legitimate safety and security reason. *See Sanchez v. Bell*, No. 3:22-CV-1087 (SVN), 2023 WL 363045, at *3 (D. Conn. Jan. 23, 2023) (permitting Eighth Amendment claim to proceed based on lieutenant's order for plaintiff's segregation). In addition, Mr. Jordan's allegations suggest that Lieutenant Wilson and Officer Fiore and Silva subjected him to an extremely harsh level of restraints after he became injured in his cell. *See Davis v. Rinaldi*, No. 3:19-CV-504 (CSH), 2019 WL 7879729, at *11 (D. Conn. Oct. 31, 2019) (permitting plaintiff's claim of excessive force based on placement under in-

cell restraints without a legitimate safety or security basis for plaintiff's placement).

Accordingly, the Court will permit Mr. Jordan to proceed on his Eighth Amendment excessive force (or failure to intervene) claims arising from the allegedly harsh use of elevated restraints against Lieutenant Wilson and Correction Officers Fiore and Silva in their individual capacities.

### 4.    The Eighth Amendment Deliberate Indifference Claim

The Eighth Amendment to the U.S. Constitution prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. The Supreme Court has long recognized that prison officials violate the Eighth Amendment if they are deliberately indifferent to the serious medical needs of a sentenced prisoner. *See Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The prisoner must show that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,' and (2) subjectively, that the defendants acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006)). It is not enough to allege medical malpractice unless the malpractice involves culpable recklessness—actions that evince a conscious disregard of a substantial risk of serious harm. *See Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

To be "sufficiently serious," the deprivation of medical care must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hill*, 657 F.3d at 122. This inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 280. Factors to consider include "[t]he existence of an injury that a reasonable doctor or patient would

find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702.

Prison conditions can constitute cruel and unusual punishment in violation of the Eighth Amendment if prison officials act, or fail to act, with "deliberate indifference to a substantial risk of serious harm to a prisoner." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate both an objective and a subjective element.

To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[ ]" or posed "a substantial risk of serious harm" to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Supreme Court has identified the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions, and exercise. *See Wilson*, 501 U.S. at 304; *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *Rhodes*, 452 U.S. at 348. Conditions are considered in combination when they have a "mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example a low cell temperature at night combined with a failure to issue blankets." *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991).

For both claims of indifference to medical needs or health and safety, the prisoner must allege facts to suggest that the defendants acted not merely carelessly or negligently, but with a subjectively reckless state of mind akin to criminal recklessness. In other words, Mr. Jordan must allege that the defendants were aware of a substantial risk that he would be seriously harmed if

they did not act. *See, e.g.*, *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012) (*per curiam*); *Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011). But "[o]fficials need only be aware of the risk of harm, not intend harm. And awareness may be proven from the very fact that the risk was obvious." *Spavone*, 719 F.3d at 138.

    a.    <u>Denial of Exercise</u>

While exercise is a basic human need, prison officials may limit the right to out-of-cell exercise where there is a valid safety exception or certain unusual circumstances. *Williams v. Greifinger*, 97 F.3d 699, 704 (2d Cir. 1996). A lack of indoor exercise and an "occasional day without exercise" does not give rise to a constitutional claim where "outdoor recreation space [is] provided[,] and opportunity for its daily use [is] assured." *Anderson v. Coughlin*, 757 F.2d 33, 36 (2d Cir. 1985).

Mr. Jordan alleges that he was denied all opportunity to engage in exercise or outdoor recreation after his transfer to CRCC. Mr. Jordan fails to provide allegations to identify the individuals who issued the order to prohibit his opportunity to engage in any out-of-cell exercise or outdoor recreation. As his only allegations about the involvement of any defendant in denial of his access to out-of-cell exercise, Mr. Jordan alleges that Acting Warden Perez denied his Level-1 grievance complaining about inadequate access to out-of-cell exercise at CRCC. For purposes of initial review, Mr. Jordan may proceed against Warden Perez in his individual capacity for further development of the record about his inadequate access out-of-cell exercise claim.

Mr. Jordan also provides specific facts about one occasion when he was not permitted to engage in his work out during recreation on June 26, 2023. Generally, courts in this Circuit have rejected Eighth Amendment claims based on brief deprivations of the opportunity to exercise.

*See Branham v. Meachum*, 77 F.3d 626, 630–31 (2d Cir. 1996) (holding that keeping plaintiff on full restraint status without outdoor recreation for 22 days does not state an Eighth Amendment claim); *see Crichlow v. Annucci*, No. 9:21-CV-0692 (DNH/TWD), 2022 WL 179917, at *19 (N.D.N.Y. Jan. 20, 2022) (inmate's allegations about certain "on & off" missed recreation opportunities during a four month period failed to state Eighth Amendment claim).

Accordingly, as presently alleged, Mr. Jordan's Complaint fails to raise a plausible claim based on any exercise allegedly deprived on June 26, 2023, and these Eighth Amendment claims based on his inability to exercise will be dismissed as not plausible.

b.    Placement in Restraints

Mr. Jordan alleges that Wilson, Fiore, and Silva subjected him to a harsh level of restraints after he banged his head in his cell and became unconscious. If true, these allegations are sufficient to raise an inference that Wilson, Fiore, and Silva acted with deliberate indifference to his health and safety by exposing him to a serious risk of harm when they placed at that time him in extremely harsh restraints.

Accordingly, Mr. Jordan may proceed on his claims of Eighth Amendment deliberate indifference to his health and safety against Wilson, Fiore, and Silva in their individual capacities.

c.    Mental Health Needs

The Eighth Amendment prohibits deliberate indifference to an inmate's serious mental health needs. *See Spavone*, 719 F.3d at 138. Mr. Jordan alleges that Officers Dillard, Flemming and York were aware of, but ignored, his requests for mental health assistance. Construed most favorably, these allegations raise an inference that Officers Dillard, Flemming and York acted with deliberate indifference to Mr. Jordan's need for mental health treatment.

Accordingly, Mr. Jordan may proceed against Officers Dillard, Flemming, and York in their individual capacities for damages for Eighth Amendment mental health indifference.

**5.      The Fifth Amendment Claims**

Mr. Jordan asserts that Defendants have violated his Fifth Amendment rights. The Court assumes that Mr. Jordan intended to bring claims that the defendants violated his Fifth Amendment due process rights. However, the Fifth Amendment's Due Process Clause does not apply to state actors. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002); *Baltas v. Rizvani*, 2022 WL 17251761, at \*17 (D. Conn. Nov. 28, 2022).

Accordingly, any Fifth Amendment claims are dismissed as not plausible under 28 U.S.C. § 1915A(b)(1).

**6.      The Fourteenth Amendment Procedural Due Process Claim**

 "[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541 (1985). Procedural due process analysis "proceeds in two steps: [a court] first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so . . . whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke,* 562 U.S. 216, 219 (2011) (per curiam).

Liberty interests may arise from either the Due Process Clause itself or "from an expectation or interest created by state laws or policies." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005). In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court recognized that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Id.* at 483–84. In the prison context, a prisoner must show that he was subjected to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*,

515 U.S. 472, 484 (1995) (prisoner subjected to a disciplinary term of thirty days confinement in restrictive housing did not sustain a deprivation of a liberty interest for purposes due process).[6] Thus, the Court must examine the actual punishment received, as well as the conditions and duration of the punishment. *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). "The inquiry into the severity of confinement assesses whether differences in conditions between a restrictive housing status and the general population or other restrictive statuses constitute a significant hardship." *Taylor v. Rodriguez*, 238 F.3d 188, 195 (2d Cir. 2001).

"[T]he duration of [segregated] confinement is a distinct factor bearing on atypicality and must be carefully considered." *Colon v. Howard,* 215 F.3d 227, 231 (2d Cir. 2000). There is no "bright line rule that a certain period of [segregated] confinement automatically fails to implicate due process rights." *Palmer*, 364 F.3d at 64. Generally, a long period of segregation—such as more than 305 days—"is sufficiently atypical to trigger due process protections." *Ellerbe v. Jasion*, 2015 WL 1064739, at *5 (D. Conn. Mar. 11, 2015). "Where the plaintiff was confined for an intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer*, 364 F.3d at 64–65 (cleaned up). "[R]estrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual." *Davis,* 576 F.3d at 133; *Kalwasinski v. Morse*, 201 F.3d 103, 107–08 (2d Cir. 1999) (discussing factors relevant to deciding if confinement in SHU constitutes an atypical hardship).

---

[6] *Sandin* applies to circumstances involving both administrative and disciplinary segregation. *Arce v. Walker*, 139 F.3d 329, 335 (2d Cir. 1998).

If there is a liberty interest, the level of due process required depends upon the context of the proceeding. For a disciplinary matter, an inmate is entitled to: (1) advance "written notice of the charges[;]" (2) "no less than 24 hours" to prepare a defense; (3) "a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action[;]" and (4) the right "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell*, 418 U.S. 539, 561–66 (1974). Due process requires that notice be sufficient to inform the inmate of the grounds for the charges to enable the inmate to prepare a defense to those charges. *Taylor v. Rodriguez*, 238 F.3d 188, 192–93 (2d Cir. 2001). For an administrative proceeding, the inmate is entitled only to "some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding" the matter. *Hewitt v. Helms*, 459 U.S. 460, 476 (1983).

Mr. Jordan's Complaint raises procedural due process concerns in connection with his disciplinary charges. But, even assuming that Mr. Jordan has liberty interest in connection with his administrative segregation after being charged with disciplinary offense on June 26, 2023, Mr. Jordan's Complaint indicates that he received notice and opportunity to present his views consistent with due process standard for administrative matters.

With respect to his disciplinary proceedings, Mr. Jordan indicates that he sustained a five-day period of punitive segregation after Lieutenant Pearson pressured him into pleading guilty to disciplinary charges. Mr. Jordan provides no information about his conditions of confinement. As no facts indicate that he suffered from any atypical and significantly onerous conditions while in punitive segregation (which was of short duration) in relation to the ordinary incidents of prison life, Mr. Jordan has not plausibly alleged a liberty interest as required to raise a plausible

procedural due process claim in connection with his disciplinary proceedings for his June 26, 2023 disciplinary charges. *See Shakur v. McNeil*, No. 3:20-CV-708 (VAB), 2020 WL 4818906, at *6 (D. Conn. Aug. 17, 2020) (dismissing inmate's procedural due process claim for failure to state liberty interest based on five days of punitive segregation).

Accordingly, Mr. Jordan has failed to allege any plausible Fourteenth Amendment claim of due process violation against Lieutenant Pearson or any other Defendant, and this claim will be dismissed.[7]

### 7.    The First Amendment Retaliation Claim

To plead a First Amendment retaliation claim, an inmate must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against [him or her], and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (citation omitted). The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official— even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citation omitted). "Protected speech or activity includes filing a lawsuit, an administrative complaint, or a prison grievance." *Baltas v. Maiga*, No. 3:20-cv-1177 (MPS), 2020 WL 6275224,

---

[7] To the extent that he asserts a violation of his Fourteenth Amendment equal protection rights, Mr. Jordan has not alleged facts to suggest that (1) he was treated differently from similarly situated individuals due to any "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000). Sentenced inmates are not members of a protected or suspect class. *Gonzalez v. Hannah*, 2020 WL 3256869, at *8 (D. Conn. June 16, 2020). Likewise, Mr. Jordan has not alleged facts to suggest that he was discriminated against as a "class of one" based on intentional disparate treatment from comparators without a rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The Complaint contains no facts to suggest that Mr. Jordan was treated differently from any other inmate or comparator.

at *8 (D. Conn. Oct. 26, 2020).

Mr. Jordan has alleged that he engaged in protected conduct by filing grievances. But to the extent he asserts claims of First Amendment retaliation in this action, Mr. Jordan has not alleged "specific and detailed factual allegations" to support a claim that he sustained adverse action due to his protected activity. *See Dolan*, 794 F.3d at 295. Consistent with the Second Circuit instruction to approach retaliation claims with some measure of skepticism, the Court cannot permit Mr. Jordan to proceed on First Amendment retaliation claims that are based on conclusory claims of retaliatory animus.

Accordingly, this claim will be dismissed.

### 8.      The Access to the Courts Claim

The First Amendment to the United States Constitution (in conjunction with the other constitutional provisions) guarantees prisoners of "the right of access to the courts." *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Morello v. Hames*, 810 F.3d 344, 346 (2d Cir. 1987). Thus, prison officials are prohibited from "actively interfering with inmates' attempts to prepare legal documents or file them . . ." *Lewis*, 518 U.S. at 350 (internal citation omitted). But, to prevail in a § 1983 access to the court claim, an inmate-plaintiff must demonstrate that a prison official "actually interfered with his access to the courts or prejudiced an existing action." *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 345 (N.D.N.Y. 2010). A prisoner must show that he suffered an "actual injury" to a non-frivolous legal claim. *Kaminski v. Semple*, 796 F. App'x 36, 38–39 (2d Cir. 2019) (summary order) (quoting and citing *Lewis*, 518 U.S. at 349, 352–54). A plaintiff must describe the underlying claim "well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Christopher v. Harbury*, 536 U.S. 403, 416 (2002).

Mr. Jordan appears to assert that rejections of his grievances and interference and/or changes to the grievance procedure have prevented him from complying with the PLRA exhaustion requirement. *See* 42 U.S. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Here, Mr. Jordan's Complaint does not allege facts sufficient to support an inference that he suffered an actual injury to a non-frivolous legal claim. Moreover, the PLRA only requires inmates to exhaust "available" administrative remedies. If prison officials improperly rejected or restricted Mr. Jordan's administrative grievance filings, then they would have deprived him of any "available" administrative remedy. *See Baltas v. Efre*, 3:19-cv-1820 (MPS), 2020 WL 1915017, at *33 (D. Conn. April 20, 2020). And, lacking an available administrative remedy to exhaust, Mr. Jordan would be free to pursue claims in federal court. *Id.*

Accordingly, the Court will not permit Mr. Jordan to proceed on a constitutional claim based on deprivation of his court access, and such claim will be dismissed.

### 9.     The Fourth Amendment Claim

The Fourth Amendment protects against "unreasonable" governmental "searches and seizures." U.S. Const. amend. IV. The "proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). But "inmates retain a limited right of bodily privacy under the Fourth Amendment." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016). Mr. Jordan alleges that Officers Silva and Fiore and Lieutenant Wilson were involved with dragging him—while unconscious and naked—and placing him into the four-point restraints without a legitimate reason.

23

Accordingly, for initial review purposes, the Court will permit Mr. Jordan to proceed on a Fourth Amendment claim against Silva, Fiore, and Wilson in their individual capacities, and will revisit this claim after further development of the record.

### 10.    The Protection and Advocacy for Mentally Ill Individuals Claim

The Protection and Advocacy for Mentally Ill Individuals Act of 1986 ("PAIMI"), 42 U.S.C. §§ 10801–10805, requires each state, as a condition of receiving certain federal funding, to establish a government agency or private organization as the protection and advocacy service for the state to protect and advocate for the rights of individuals with mental illness. 42 U.S.C. §§ 10802, 10803. Under PAIMI, qualifying protection and advocacy agencies/organizations have statutory authority, to "pursue administrative, legal and other appropriate remedies to ensure the protection of individuals with mental illness . . . ." *Id.* at § 10805(a)(1)(B).

Mr. Jordan alleges a violation of his rights under the Protection and Advocacy for Mentally Ill Individuals Act of 1986. But the Supreme Court has held that no basis for a private lawsuit exists, "whether under 1983 or under an implied right of action," unless the "text and structure of a [federal] statute provide[s] . . . [an] indication that Congress intend[ed] to create new individual rights." *Gonzaga University v. Doe,* 536 U.S. 273, 286 (2002). Even more specifically, courts have uniformly held that the provisions of PAIMI do not provide a private right of action to an individual to enforce the requirements regarding the protection of individuals with mental illness. *See Lawson v. Nat'l Church Residencies,* No. 5:15-cv-332-MW-GRJ, 2016 WL 2643155, at *2 (N.D. Fla. Apr. 6, 2016) ("PAIMI does not create an enforceable private right of action."), *report and recommendation accepted and adopted,* No. 5:15-cv-332-MW/GRJ, 2016 WL 3566856, at *1 (N.D. Fla. June 27, 2016); *Darnell v. Jones,* No. CIV-12-1065-M, 2014 WL 4792144, at *3 n.4 (W.D. Okla. Sept. 24, 2014) ("PAIMI Act authorizes

certain protection and advocacy systems to bring suit regarding access to patient records; its provisions do not provide a private cause of action to" plaintiff who is an inmate) (citations omitted), *aff'd*, 610 F. App'x. 720 (10th Cir. 2015); *Romeo v. Aid to Developmentally Disabled, Inc.*, No. 11-CV-6340 (JS)(GRB), 2013 WL 5532649, at *2 (E.D.N.Y. Oct. 3, 2013) (granting motion to dismiss on ground that the individual defendants were "not state actors" for purposes of 42 U.S.C. §§ 1983, 1985, 1986 and "that PAIMI create[d] no privately enforceable federal rights"); *Burke v. North Dakota Dep't Corr. & Rehab.*, No. 1:07-cv-4, 2007 WL 1456217, at *8 (D.N.D. May 16, 2007) (language of PAIMI "reveals no intent on the part of Congress to provide private remedy to review individual decisions of the protection and advocacy organizations regarding whether to provide services to particular individuals").

Accordingly, Mr. Jordan's claims under the PAIMI will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

## 11.    The Violation of Prison Rules, Administrative Directives or Regulations Claims

Mr. Jordan asserts violations of prison rules and regulations. However, a defendant's failure to comply with prison regulations or administrative directives does not constitute a basis for relief under section 1983 because "a prison official's violation of a prison regulation or policy does not establish that the official has violated the Constitution or is liable to a prisoner under 42 U.S.C. § 1983." *Fine v. UConn Med.*, No. 3:18-CV-530 (JAM), 2019 WL 236726, at *9 (D. Conn. Jan. 16, 2019) (citation omitted).

Accordingly, such allegations concerning violation of prison rules and regulations fail to state plausible claims under section 1983, and any such alleged claims will be dismissed.

## 12.    Official Capacity Claims

A plaintiff may proceed for injunctive or declaratory relief against a defendant in his or her

official capacity only to the extent he alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Further, a claim for injunctive relief can only proceed against defendants who "plausibly have the authority to grant the prospective relief." *See Smith v. Perez*, No. 19-CV-1758, 2020 WL 2307643, at *6 (D. Conn. May 8, 2020). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846–47 (1994)).

Mr. Jordan's Complaint indicates he asserts his claims against Defendants in their official capacities. As a preliminary matter, Mr. Jordan may not proceed in this action on his official capacity claims against DOC employees who work at CRCC. As Mr. Jordan is no longer housed at CRCC, his requests for official capacity relief against these Defendants are moot. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (an inmate's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials at that facility). In addition, Mr. Jordan has not alleged facts to suggest that he is subject to any ongoing or continuing constitutional violation. Finally, to the extent he asserts official capacity claims for monetary damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Accordingly, Mr. Jordan has not alleged any plausible official capacity claims for injunctive or declaratory relief, and therefore any such relief sought will be dismissed from this lawsuit.

## C.   The State Law Claims

This Court can exercise supplemental jurisdiction over a state law claim if: (1) there is a

claim arising under the federal constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact. *Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989), *abrogated on other grounds by Graham v. Connor*, 490 U.S. 386 (1989); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

      1.      The State Assault and Battery Claims

In Connecticut, a civil assault is defined as "the intentional causing of imminent apprehension of harmful or offensive contact with another." *German v. Dzurenda*, No. 3:09-cv-1316 (SRU), 2011 WL 1214435, at *22 (D. Conn. Mar. 28, 2011). "[A]n actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Id.* (quoting *Alteiri v. Colasso*, 168 Conn. 329, 334 n.3 (1975)). The Court construes Mr. Jordan's Complaint to raise state law claims of assault and battery that fall within the Court's supplemental jurisdiction.

Accordingly, for purposes of initial review, the Court will permit Mr. Jordan to proceed against Officers Silva and Fiore and Lieutenant Wilson claims of state law assault and battery for further development of the record.

      2.      The State Protect Act and Officer Accountability Act

As an initial matter, a plaintiff cannot merely mention violation of a statutory provision to state a claim for relief under that provision. *See, e.g., Monger v. Conn. Dep't of Transp.*, 2017 WL 3996393, at *5 (D. Conn. Sept. 11, 2017) ("Merely mentioning the state constitution,

however, is not sufficient to state a claim upon which relief can be based.").

Mr. Jordan asserts violation of the state statutory provisions referred to in the Complaint as the Protect Act and the Officer Accountability Act. This Court's research has revealed no case law in support of Mr. Jordan's assertions of private right of actions under the alleged statutory provisions. *See Jones v. Beckert*, No. 23-CV-1603 (VDO), 2024 WL 308480, at *9 (D. Conn. Jan. 26, 2024) (dismissing plaintiff's claims for damages under the "Protect Act"). As Mr. Jordan raises claims of novel and undeveloped issues of state law, and out of deference to the State as the final arbiter of its state statutory law, the Court declines to exercise supplemental jurisdiction over Mr. Jordan's claims brought under the Connecticut Constitution, the Protect Act, and the Officer Accountability Act. *See* 28 U.S.C. § 1367(c) ("The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the claim raises a novel or complex issue of State law.").

Accordingly, this claim will dismissed without prejudice to renewal in a proper state court proceeding.

## III.   ORDERS

For the foregoing reasons, the Court enters the following orders:

The case shall proceed on Mr. Jordan's individual capacity claims for damages for:

(1) an Eighth Amendment violation based on excessive force against Lieutenant Wilson and Officers Silva and Fiore;

(2) an Eighth Amendment violation based on deliberate indifference to his inadequate access to out-of-cell exercise against Acting Warden Perez;

(3) an Eighth Amendment violation based on deliberate indifference to Mr. Jordan's health and safety against Lieutenant Wilson and Officers Silva and Fiore;

(4) an Eighth Amendment violation based on deliberate indifference to Mr. Jordan's mental health needs against Officers Dillard, Flemming and York;

(5) a Fourth Amendment violation against Lieutenant Wilson and Officers Silva and Fiore; and

(6) State law assault and battery claims against Lieutenant Wilson and Officers Silva and Fiore.

All allegations and claims that do not relate to, or arise from, occurrences on June 26, 2023 are **SEVERED** as **MISJOINED** in this action. Mr. Jordan must pursue such claims in separate actions. *See* Fed. R. Civ. P. 20 & 21.

Mr. Jordan's other Eighth Amendment claims are **DISMISSED**. Mr. Jordan's claims about deprivations of his right to court access and rights under the First, Fifth, and Fourteenth Amendments and PAIMI are **DISMISSED**. Mr. Jordan's official capacity claims are **DISMISSED**. Mr. Jordan's claims under state statutory law are **DISMISSED** under 28 U.S.C. § 1367(c).

Defendants DOC, DOC Commissioner Quiros, Dr. Kocienda, ADA Coordinator Gallagher, External Affairs Officer Martucci, Lieutenant Bowers, Acting Warden Oles, RCOO Sanchez, Lieutenant Bellamare, Lieutenant Pearson, Officer Werner, Dr. Gagne, Dr. Grande, Officer Doe 1, Officer Doe 2, Officer Doe 3, Officer Doe 4, "Mental Health Personnel Clinicians, Provider Corrigan C.C." and "Medical Dep't. APRN; RN; Drs; Providers Corrigan C.C." are all **DISMISSED** from this action.

**Mr. Jordan has two options as to how to proceed in response to this Initial Review Order:**

(1) If Mr. Jordan wishes to proceed immediately **only** on the claims set forth above against

Acting Warden Perez, Lieutenant Wilson and Officers Silva, Officer Fiore, Dillard, and York, he may do so without further delay. If Mr. Jordan selects this option, he shall file a notice on the docket on or before **July 5, 2024**, informing the Court that he elects to proceed with service as to the claims set forth in this paragraph. After he files this notice, the Court will begin the effort to serve process on the Defendants named above in their individual capacity as described above.

(2) Alternatively, if Mr. Jordan wishes to attempt to replead any of the claims asserted in his Complaint that have been dismissed in order to attempt to state a viable claim, he may file an Amended Complaint by **July 5, 2024**.

**An Amended Complaint, if filed, will completely replace the Complaint, and the Court will not consider any allegations made in the original complaint in evaluating any Amended Complaint.** The Court will review any Amended Complaint after filing to determine whether it may proceed to service of process on any Defendants named therein. If Mr. Jordan elects to file an Amended Complaint, the Complaint this Initial Review Order addresses will **not** proceed to service of process on any defendant.

If the Court receives no response from Mr. Jordan by **July 5, 2024**, the Court will presume that Mr. Jordan wishes to proceed on the Complaint as to the claims permitted to go forward in this Initial Review Order, and Mr. Jordan will have to show good cause if he seeks to amend the Complaint in any manner in the future.

**Changes of Address.** If Mr. Jordan changes his address at any time during the litigation of this case, Local Rule 83.1(c) provides that he **MUST** notify the Court. Failure to do so can result in the dismissal of the case. Mr. Jordan must give notice of a new address even if he is incarcerated. Mr. Jordan should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Jordan has

more than one pending case, he should indicate all the case numbers in the notification of change of address. Mr. Jordan should also notify Defendants or counsel for Defendants of his new address.

      **SO ORDERED** at New Haven, Connecticut, this 31st day of May, 2024.

 

                     /s/ Victor A. Bolden           
                     VICTOR A. BOLDEN
                     UNITED STATES DISTRICT JUDGE