# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| VICTOR LAMONT JORDAN SR.,<br>*Plaintiff*,<br><br>v.<br><br>DEPARTMENT OF CORRECTIONS,<br>ET AL.,<br>*Defendants*. | No. 3:24-cv-298 (VAB) |

## INITIAL REVIEW ORDER RE: AMENDED COMPLAINT

Victor Lamont Jordan, Sr. ("Plaintiff"), a sentenced inmate housed at Cheshire Correctional Institution ("Cheshire") in the custody of the Connecticut Department of Correction ("DOC"), filed this civil rights Complaint under 42 U.S.C. § 1983.[1] Compl., ECF No. 1. In his original Complaint, Mr. Jordan asserted violation of his rights under the United States Constitution and PAIMI while he was housed at DOC's Corrigan-Radgowski Correctional Center ("CRCC") against DOC and several DOC employees.

After initial review, the Court severed as misjoined Mr. Jordan's allegations and claims that do not relate to, or arise from, occurrences on June 26, 2023. *See* Fed. R. Civ. P. 20 & 21. Initial Review Order ("IRO"), ECF No. 14 (May 31, 2024). The Court determined that Mr. Jordan stated plausible claims of (1) Eighth Amendment violation based on excessive force against Lieutenant Wilson and Officers Silva and Fiore; (2) Eighth Amendment violation based on

---

[1] Information on the Department of Correction ("DOC") website shows that Mr. Jordan was sentenced on December 4, 2008 to term that has not yet expired, and that he is currently housed at Cheshire. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=339978 (last visited March 19, 2024). *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425 (KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information). http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=165080.

deliberate indifference to his inadequate access to out-of-cell exercise against Acting Warden Perez; (3) Eighth Amendment violation based on deliberate indifference to Mr. Jordan's health and safety against Lieutenant Wilson and Officers Silva and Fiore; (4) Eighth Amendment violation based on deliberate indifference to Mr. Jordan's mental health needs against Officers Dillard, Flemming and York; (5) Fourth Amendment violation against Lieutenant Wilson and Officers Silva and Fiore; and (6) state law assault and battery claims against Lieutenant Wilson and Officers Silva and Fiore. *Id.* The Court afforded Mr. Jordan the opportunity to file Amended Complaint to replead any of his claims that were dismissed in order to state viable claims. *Id.*

Mr. Jordan has filed an Amended Complaint against Acting Warden Perez; Lieutenants Wilson and Bowers; Correction Officers Dillard, Flemming, Werner, York, Brown, Pendleton, Berard, Kravies, Fiore, Silva, Servidio, Serrano, and Biegaj;[2] Acting Warden Perez; LPN Trista; and RN Dawn. He asserts his claims against Defendants in their individual capacities.[3] ECF No. 18.

The Prison Litigation Reform Act ("PLRA") requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The Court has thoroughly reviewed all factual allegations

---

[2] The docket shows this Defendant's names as Biegan, but it is apparent from the allegations that it is spelled Biegaj. *See* Am. Compl. at ¶ 39.
[3] Rule 10 of the Federal Rules of Civil Procedure states that "[t]he title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). Accordingly, the Court only considers whether Mr. Jordan has alleged plausible claims against the individuals named in the case caption.

in the Amended Complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

For the reasons that follow, the case shall proceed on the following claims brought against the following Defendants in their individual capacity:

(1) an Eighth Amendment deliberate indifference claim against Acting Warden Perez and Lieutenant Bowers for the alleged inadequate access to out-of-cell exercise;

(2) an Eighth Amendment deliberate indifference claim against Lieutenant Wilson, and Officers Berard, Kravies, Silva, Fiore, Biegaj, Serrano, Werner, and Servidio for the alleged indifference to Mr. Jordan's health and safety;

(3) an Eighth Amendment deliberate indifference claim against Officers Dillard, Flemming and York; Acting Warden Perez and Lieutenant Bowers; and RN Dawn and LPN Trista for the alleged indifference to Mr. Jordan's mental health and medical needs;

(4) an Eighth Amendment excessive force claim against Lieutenant Wilson, and Officers Dillard, Brown, York, Pendleton, Berard, Kravies, Silva, Fiore, Biegaj, Serrano, Werner, and Servidio, LPN Trista, and RN Dawn;

(5) a Fourth Amendment claim against Officers Lieutenant Wilson, Officers Berard, Kravies, Silva, Fiore, Biegaj, Serrano, Werner, and Servidio, LPN Trista, and RN Dawn; and

(6) state law assault and battery claims against Lieutenant Wilson, and Officers Silva, Fiore, Serrano, and Werner.

All other claims are **DISMISSED.**

3

I.    **BACKGROUND**[4]

On June 26, 2023, Mr. Jordan allegedly had been placed at CRCC on tier recreation and walked to the corner of the unit where inmates work out. Am. Compl. at ¶ 1. He allegedly has a serious spinal condition and mental health conditions. *Id.* at ¶ 2. He claims exercise outside of his cell is necessary for his spinal conditions and mental health. *Id.* at ¶ 3.

Mr. Jordan has filed administrative remedies about the need to provide inmates at the facility with exercise, outdoor recreation, or access to the gymnasium. *Id.* at ¶ 53. He has informed both Lieutenant Bowers and Acting Warden Perez that correctional staff was not providing opportunities for exercise on a regular basis and that he needed to exercise for his mental health and his spinal condition. *Id.* at ¶ 54. Mr. Jordan alleges that Lieutenant Bowers and Acting Warden Perez took no measures after being informed of Mr. Jordan's serious needs for exercise. *Id.* at ¶ 54. He appears to allege that Acting Warden Perez denied his grievances about the inadequate recreational and exercise opportunities prior to June 26, 2023. *Id.* at ¶ 53.

On June 26, 2023, Officer Dillard allegedly informed Mr. Jordan that he had to stop his exercise. *Id.* at ¶ 4. Mr. Jordan allegedly advised Officer Dillard that he needs to work out physically for his mental and physical health needs. *Id.* at ¶¶ 4–5. He allegedly indicated that Officer Dillard could call mental health staff for him and could issue him a disciplinary report if he had concerns about Mr. Jordan's exercising. *Id.* at ¶ 5. Mr. Jordan allegedly did not exhibit any

---

[4] The Court does not include herein all of the allegations from the Amended Complaint but summarizes only facts to provide a context to this initial review. Mr. Jordan has submitted an Amended Complaint with 23 pages of allegations and 141 pages of exhibits. The Court refers to Mr. Jordan's exhibits as his allegations can be difficult to discern. But Mr. Jordan is advised that he may not rely on exhibits in lieu of alleging facts in a complaint to state a claim against a defendant. *See Rahim v. Barsto*, 2022 WL 2704102, at *5 (D. Conn. July 12, 2022) (citing Fed. R. Civ. P. 8 and noting that plaintiff could not rely on exhibits to state deliberate indifference claim); *see also Walker v. Pastoressa*, 2022 WL 3716742, at *5 (E.D.N.Y. Aug. 29, 2022) (noting plaintiff may not rely on exhibits to satisfy Rule 8's requirement to provide a short and plain statement.).

hostility or threat toward Officer Dillard. *Id.* at ¶ 6.

Officers Dillard and Flemming allegedly requested assistance from Officer York. *Id.* at ¶ 7. After Mr. Jordan allegedly explained that he needed to see mental health staff, Officer York allegedly asked him about personal information protected under Health Insurance Portability and Accountability ("HIPPA")[5] in the presence of other inmates. *Id.* He allegedly advised her not to ask such questions in the presence of other inmates and also allegedly indicated that he needed the officers to contact the mental health staff. *Id.* Officers Dillard, Flemming and York allegedly refused to call mental health staff. *Id.* at ¶ 8.

Mr. Jordan allegedly decided he should return to his cell to lock-in. *Id.* at ¶ 8. Officer Flemming allegedly stated that Mr. Jordan could not return to his cell because he needed to see the lieutenant in the hall. *Id.* at ¶ 8. At that moment, Lieutenant Wilson allegedly arrived in the unit and the officers allegedly informed him that Mr. Jordan refused to stop exercising. *Id.* at ¶ 9.

Lieutenant Wilson allegedly ordered Mr. Jordan to turn around and stand against the wall and informed him that he would be sent to segregation for disobeying a direct order. *Id.* at ¶ 9. Mr. Jordan allegedly questioned whether he could be placed in the Restrictive Housing Unit for that offense. *Id.* at ¶ 9. Lieutenant Wilson allegedly responded that he would state that Mr. Jordan was flagrantly disobeying an order. *Id.* at ¶ 9. Mr. Jordan claims that Lieutenant Wilson made a false allegation to increase the disciplinary charge from a minor offense to Class A offense. *Id.* at ¶ 10.

Mr. Jordan allegedly requested that Lieutenant Wilson use a camcorder to document the

---

[5] To the extent Mr. Jordan claims violation of his HIPPA rights, such claim is not plausible. HIPPA does not create a private right of action and cannot support a claim under section 1983. *See Rogers v. Rensselaer Cnty. Sheriff's Dep't*, No. 1:14-CV-01162(MAD/TWD), 2015 WL 4404788, at *7 (N.D.N.Y. July 17, 2015) ("It is well established that, because there is no private right of action under HIPAA, a violation of the Act cannot serve as the basis of a § 1983 claim.") (citing cases).

incident and argued with Lieutenant Wilson about the scope of the use of the camcorder. *Id.* at ¶ 13. Mr. Jordan allegedly advised that he wanted to hold the Lieutenant Wilson and any others assisting him accountable for violation of his rights. *Id.* at ¶ 13. Mr. Jordan alleges that Lieutenant Wilson was assisted by Officers Brown and Pendleton in securing Mr. Jordan and escorting him to the Medical Unit, where Nurse Dawn conducted an evaluation for RHU placement. *Id.* at ¶ 14, p. 35 (Incident Report).

Before being placed in the Restrictive Housing Unit ("RHU"), nonparty Mental Health Clinician Gomes allegedly evaluated Mr. Jordan and placed him on Behavior Occupational Status. *Id.* at ¶ 26; p. 29 (Shift Commander Overview and Notification Sheet).

An incident report submitted as an exhibit allegedly indicates that Officer Berard conducted a strip search of Mr. Jordan while Officers Pendleton and Brown secured Mr. Jordan. *Id.* at p. 35.

After he was placed in the RHU, Mr. Jordan allegedly banged his head and split it open because of his severe anxiety. *Id.* at ¶ 15. He allegedly felt as if could not breathe and experienced pain. *Id.* He allegedly remembers speaking with a nurse (later identified as LPN Trista) before his collapse and waking up to a nurse (either LPN Trista or RN Dawn) applying ice to his head; he also allegedly remembers he felt pain in his right shoulder and back and that he was in full stationary restraints strapped to a flat surface. *Id.* at ¶¶ 16, 27. Trista and Dawn allegedly may have been aware of the correctional officers' conduct to drag him from one cell to another and then fully restrain him. *Id.* at ¶ 27. Neither allegedly acted to provide Mr. Jordan the medical treatment necessary for his concussion, namely placement on a stretcher with a neck brace during movement. *Id.* at ¶ 28.

Mr. Jordan claims that Officers Berard, Kravies, Silva, Servidio, and Fiore were involved with his being dragged from one to another unconscious and naked without a stretcher and placed in full restraints. *Id.* at ¶ 29-33.

Later, Officer Serrano allegedly made false reports about Mr. Jordan requiring full restraints after he became agitated and making threats when he was given full range of motion and used the bathroom. *Id.* at ¶¶ 34-36. Officers Biegaj, Werner and Servidio allegedly were all present when Mr. Jordan was returned to full restraints after having been afforded full range of motion. *Id.* at ¶¶ 39, 40, 43.

Mr. Jordan alleges that he was also subject to filthy cell conditions and that he was not provided with any extra bedding for his spine condition. *Id.* at ¶ 17.

He allegedly feels hopeless, due to his mental illness, when he is exposed to certain environments and circumstances, including unfair persecution. *Id.* at ¶ 17.

## II.    DISCUSSION

Mr. Jordan asserts violation of his rights under 42 U.S.C. § 1983 for Fourth and Eighth Amendments claims and state law claims of assault and battery.

Section 1983 "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999). The Court first considers whether Mr. Jordan has alleged any plausible claims against Defendants in their individual capacities.

For any claim seeking monetary damages from a defendant under section 1983, Mr. Jordan must allege facts that establish the personal involvement of that defendant in the alleged

constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation omitted)). This is true with respect to supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020). Thus, a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Id.*

The Court will address each specific Section 1983 claim in turn.

### A.    The Eighth Amendment Deliberate Indifference Claim

The Eighth Amendment to the U.S. Constitution prohibits "cruel and unusual punishments." U.S. Const. Amend. 8.

The Supreme Court has long recognized that prison officials violate the Eighth Amendment if they are deliberately indifferent to the serious medical needs of a sentenced prisoner. *See Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The prisoner must show that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,' and (2) subjectively, that the defendants acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006)). It is not enough to allege medical malpractice unless the malpractice involves culpable recklessness—actions that "evince[] a conscious disregard of a substantial risk of serious harm." *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)).

To be "sufficiently serious," the deprivation of medical care must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hill*, 657 F.3d at 122. This inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 280. Factors to consider include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir.1992)) (alteration in original).

Prison conditions can constitute cruel and unusual punishment in violation of the Eighth Amendment if prison officials act, or fail to act, with "deliberate indifference to a substantial risk of serious harm to a prisoner." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate both an objective and a subjective element. To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a human need or posed "a substantial risk of serious harm" to his health or safety. *See Farmer*, 511 U.S. at 834; *Rhodes*, 452 U.S. at 347.

The Supreme Court has identified the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions, and exercise. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *Rhodes,* 452 U.S. at 348. Conditions are considered in

combination when they have a "mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson*, 501 U.S. at 304.

For both claims of indifference to medical needs or health and safety, the prisoner must allege facts sufficient to suggest that the defendants acted not merely carelessly or negligently, but with a subjectively reckless state of mind akin to criminal recklessness. In other words, Mr. Jordan must allege that the defendants were aware of a substantial risk that he would be seriously harmed if they did not act. *See, e.g.*, *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012) (*per curiam*). But "[o]fficials need only be aware of the risk of harm, not intend harm. And awareness may be proven 'from the very fact that the risk was obvious.'" *Spavone*, 719 F.3d at 138 (quoting *Farmer*, 511 U.S. at 834).

    a.   <u>Denial of Exercise</u>

While exercise is a basic human need, prison officials may limit the right to out-of-cell exercise where there is a valid safety exception or certain unusual circumstances. *Williams v. Greifinger*, 97 F.3d 699, 704 (2d Cir. 1996). A lack of indoor exercise and an "occasional day without exercise" does not give rise to a constitutional claim where "outdoor recreation space [is] provided[,] and opportunity for its daily use [is] assured." *Anderson v. Coughlin*, 757 F.2d 33, 36 (2d Cir. 1985).

Mr. Jordan alleges that Acting Warden Perez and Lieutenant Bowers ignored his complaints about inadequate access to recreation and exercise at CRCC. For purposes of initial review, the Court concludes that Mr. Jordan may proceed against Acting Warden Perez and

Lieutenant Bowers in their individual capacity for further development of the record about insufficient opportunity for recreation or exercise at CRCC.

Mr. Jordan's allegations that he was told to stop exercising on June 26, 2023, does not suggest an exercise deprivation of constitutional dimension. *See Branham v. Meachum*, 77 F.3d 626, 630-31 (2d Cir. 1996) (holding that keeping plaintiff on full restraint status without outdoor recreation for 22 days does not state an Eighth Amendment claim); *see Crichlow v. Annucci*, No. 9:21-CV-0692 (DNH/TWD), 2022 WL 179917, at *19 (N.D.N.Y. Jan. 20, 2022) (inmate's allegations about certain "on & off" missed recreation opportunities during a four month period failed to state Eighth Amendment claim).

Accordingly, Mr. Jordan may proceed on his Eighth Amendment insufficient opportunity to exercise claim only against Acting Warden Perez and Lieutenant Bowers in their individual capacities for further development of the record.

      b.    <u>Indifference to Health and Safety</u>

"[A] painful or harmful period of restraint can rise to the level of an objectively serious condition of confinement." *Shand v. Rodriguez*, No. 3:20-CV-1268 (SVN), 2021 WL 5988629, at *6 (D. Conn. Dec. 17, 2021). Mr. Jordan alleges that he was dragged naked and unconscious on the floor and then subjected him to a harsh level of restraints. Credited as true, these allegations about his harsh treatment and severe restraints are sufficient to raise an inference that Lieutenant Wilson, and Officers Berard, Kravies, Silva, Fiore, Biegaj, Serrano, Werner, and Servidio acted with deliberate indifference to his health and safety. Am. Compl. at ¶¶ 29–33, 39, 40, 43.

Accordingly, Mr. Jordan may proceed for damages on Eighth Amendment claims of deliberate indifference to his health and safety against Lieutenant Wilson, and Officers Berard,

Kravies, Silva, Fiore, Biegaj, Serrano, Werner, and Servidio.

      c.    <u>Unsanitary Conditions</u>

Inmates have a right to sanitary living conditions and the necessary materials to maintain

adequate personal hygiene. *See Taylor v. Riojas*, 592 U.S. 7, 8 (2020) (affirming that Eighth

Amendment was violated by conditions of "a pair of shockingly unsanitary cells": one that was

"covered, nearly floor to ceiling, in massive amounts of feces" and the second was a "frigidly

cold cell" and "equipped with only a clogged drain in the floor to dispose of bodily wastes.")

(internal quotation marks and citation omitted); *Walker v. Schult,* 717 F.3d 119, 127 (2d Cir.

2013) (citing cases for the proposition that "the failure to provide prisoners with toiletries and

other hygienic materials may rise to the level of a constitutional violation"); *LaReau v.*

*MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972) ("Causing a man to live, eat and perhaps sleep in

close confines with his own human waste is too debasing and degrading to be permitted."). Thus,

a determination of whether conditions rise to the level of an Eighth Amendment violation

depends on the totality of the circumstances. *Davidson v. Murray*, 371 F. Supp. 2d 361, 372

(W.D.N.Y. 2005).

Temporary or occasional deprivations related to personal hygiene or sanitary conditions

do not generally implicate Eighth Amendment violations. S*ee Trammell v. Keane*, 338 F.3d 155,

165 (2d Cir. 2003) ("Deprivation of other toiletries for approximately two weeks—while perhaps

uncomfortable—does not pose such an obvious risk to an inmate's health or safety to suggest that

the defendants were aware of facts from which the inference could be drawn that a substantial

risk of serious harm existed, and that they also drew the inference.") (internal citation and

alterations omitted); *Rahim v. Martin*, No. 3:23-CV-298 (MPS), 2023 WL 4745536, at *3 (D.

Conn. July 25, 2023) ("[T]he Eighth Amendment is generally not violated by an inmate's temporary or brief exposures to unsanitary conditions of confinement.").

Mr. Jordan complains about a filthy cell and lack of bedding necessary for his back pain and spinal condition. But, Mr. Jordan has not alleged facts describing the unsanitary cell conditions to suggest the state of his cell rose to the level of a constitutional deprivation. Nor does he allege that he made any defendants aware of his unacceptable cell or need for soft bedding.

Accordingly, the Court dismisses as not plausible Mr. Jordan's Eighth Amendment claims based on his unsanitary cell conditions and lack of bedding.

### d.    Medical and Mental Health Needs

To state an Eighth Amendment claim for deliberate indifference to his medical or mental needs, Mr. Jordan must allege facts showing that both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003); *Spavone*, 719 F.3d at 138. A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that is capable of causing death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003). Subjectively, the defendant must have been "subjectively reckless" by denying the plaintiff medical care. *Spavone*, 719 at 138.

### 1.    Dillard, Flemming and York

Mr. Jordan alleges that Officers Dillard, Flemming and York were aware of, but ignored, his requests for them to contact the Mental Health Unit. Construed most favorably, these

allegations raise an inference that Officers Dillard, Flemming and York acted with deliberate indifference to Mr. Jordan's mental health needs.

Accordingly, Mr. Jordan may proceed against Officers Dillard, Flemming and York in their individual capacities for damages for Eighth Amendment mental health indifference.

2. <u>Acting Warden Perez and Lieutenant Bowers</u>

For purposes of initial review, Mr. Jordan's allegations indicate Acting Warden Perez and Lieutenant Bowers were aware but ignored his serious medical and mental health need for exercise and recreational opportunities.

Accordingly, at this early stage in the proceeding, the Court will permit him to proceed against Acting Warden Perez and Lieutenant Bowers in their individual capacities for indifference to both his medical and mental health needs.

3. <u>RN Dawn and LPN Trista</u>

Mr. Jordan claims that neither LPN Trista nor RN Dawn acted to provide him with the medical treatment necessary for his concussion, namely placement on a stretcher with a neck brace during movement. Am. Compl. at ¶ 28. In addition, Mr. Jordan alleges that LPN Trista and RN Dawn may have been aware of the officers' conduct to drag him from one cell to another and then fully restrain him. *Id.* at ¶ 27.

Accordingly, at this initial stage in the proceeding, the Court will permit him to proceed on Eighth Amendment claims of indifference to his medical and mental health needs against Defendants Trista and Dawn for further development of the record.

**B.    The Eighth Amendment Excessive Force Claim**

In order to adequately allege an Eighth Amendment excessive force claim, Mr. Jordan must

show that the force employed by a defendant was not "applied in a good-faith effort to maintain or restore discipline" but was done "maliciously and sadistically to cause harm," and that the harm done was objectively serious enough to violate Mr. Jordan's constitutional right to be free from such harm. *See Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000).

The use of restraints does not violate the Eighth Amendment unless it lacks "penological justification, [is] grossly disproportionate, or involve[s] the unnecessary and wanton infliction of pain." *See Delgado v. Bezio*, 2011 WL 1842294, at *7 (S.D.N.Y. May 9, 2011) (citation omitted).

Here, Mr. Jordan alleges that he was placed in restraints and then placed in the RHU after he continued to exercise on June 26, 2023. These allegations are sufficient to raise an inference that Lieutenant Wilson ordered a response to Mr. Jordan's continuation of his exercise that may have exceeded the amount of force necessary to restore order under the circumstances, and thereby, lacked a legitimate safety and security reason. *See Sanchez v. Bell*, No. 3:22-CV-1087 (SVN), 2023 WL 363045, at *3 (D. Conn. Jan. 23, 2023) (permitting Eighth Amendment claim to proceed based on lieutenant's order for plaintiff's segregation).

Accordingly, Mr. Jordan may proceed on his excessive force claims for damages against Lieutenant Wilson, and Officers Dillard, Brown, York and Pendleton, who all may be involved with, or may have failed to prevent, the use of force after Mr. Jordan failed to stop exercising. *See id.* at ¶¶ 23-25.

In addition, Mr. Jordan sufficiently alleges that he was subjected to harsh treatment and severe restraints or force after he became injured in his cell. *See Davis v. Rinaldi*, No. 3:19-CV-504 (CSH), 2019 WL 7879729, at *11 (D. Conn. Oct. 31, 2019) (permitting plaintiff's claim of excessive force based on placement under in-cell restraints without a legitimate safety or security

basis for plaintiff's placement).

Accordingly, the Court permits Mr. Jordan to proceed on Eighth Amendment excessive force claims for damages against Lieutenant Wilson, and Officers Berard, Kravies, Silva, Fiore, Biegaj, Serrano, Werner, and Servidio, and Nurses Trista and Dawn (who appear to have some involvement) for their conduct to subject Mr. Jordan harsh treatment and use of restraints or force, or failure to intervene, after Mr. Jordan became injured in his cell. *Id.* at ¶¶ 29-33, 39, 40, 43.

### C.    The Fourth Amendment Claim

The Fourth Amendment protects against "unreasonable" governmental "searches and seizures." U.S. Const. Amend. 4. The "proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). However, "inmates retain a limited right of bodily privacy under the Fourth Amendment." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016). When evaluating a claim that an isolated search infringed on an inmate's right of bodily privacy, a court must consider four factors in determining whether the search was reasonable: "(1) the scope of the intrusion; (2) the manner in which it was conducted; (3) the justification for initiating it; and (4) the place in which it was conducted." *Id.* at 63 (citing *Bell*, 441 U.S. at 559). A strip search is unconstitutional under the Fourth Amendment "if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish." *Jean–Laurent v. Wilkerson,* 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006) (citations omitted). Accordingly, strip searches of prisoners are lawful where they are "reasonably related to legitimate security interests," a determination that is generally within "the province and professional expertise of corrections officials." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 328 (2012) (citations omitted).

Generally, courts within this District have held the administrative prison policy rule that "an inmate be strip-searched when he or she is placed in either administrative segregation or a restrictive housing unit is reasonable and valid." *Abrams v. Erfe*, No. 3:17-CV-1570 (CSH), 2018 WL 691714, at *10 (D. Conn. Feb. 2, 2018) (quoting *Holloway v. Dep't of Corr.*, No. 3:11-CV-1290 (VLB), 2013 WL 4834657, at *5 (D. Conn. Sept. 10, 2013)).

Mr. Jordan claims a violation of his Fourth Amendment rights. But there are no allegations to suggest a plausible Fourth Amendment claim arising from his strip search before being placed in the RHU.

Mr. Jordan's allegations indicate he was dragged—while unconscious and naked—and placed him into the four-point restraints, however, without a legitimate reason.

Accordingly, for initial review purposes, the Court will permit Mr. Jordan to proceed on a Fourth Amendment claim against Lieutenant Wilson, Officers Berard, Kravies, Silva, Fiore, Biegaj, Serrano, Werner, and Servidio, and LPN Trista, and RN Dawn (who may have been involved or failed to intervene in the Fourth Amendment violation) in their individual capacities for further development of the record.

### D.    The State Law Claims

This Court can exercise supplemental jurisdiction over a state law claim if: "(1) there is a claim arising under the [federal] constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact." *Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989) *abrogated on other*

17

*grounds*, *Graham v. Connor*, 490 U.S. 386 (1989) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966))

The Court construes Mr. Jordan's complaint to raise state law claims of assault and battery that fall within the Court's supplemental jurisdiction. In Connecticut, a civil assault is defined as "the intentional causing of imminent apprehension of harmful or offensive contact with another." *German v. Dzurenda*, No. 3:09-cv-1316 (SRU), 2011 WL 1214435, at *22 (D. Conn. Mar. 28, 2011) (quotation omitted). "[A]n actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Id.* (quoting *Alteiri v. Colasso*, 362 A.2d 798, 801, n.3 (Conn. 1975)).

Accordingly, for purposes of initial review, the Court will permit Mr. Jordan to proceed on his claims of state law assault and battery against Lieutenant Wilson, and Officers Silva, Fiore, Serrano, and Werner for further development of the record. *See* Am. Compl. at ¶ 61 (asserting state law assault and battery against these defendants).

## III.   ORDERS

For the foregoing reasons, the Court enters the following orders:

The case shall proceed on the following claims brought against the following Defendants in their individual capacity:

(1) an Eighth Amendment deliberate indifference claim against Acting Warden Perez and Lieutenant Bowers for the alleged inadequate access to out-of-cell exercise;

(2) an Eighth Amendment deliberate indifference claim against Lieutenant Wilson, and Officers Berard, Kravies, Silva, Fiore, Biegaj, Serrano, Werner, and Servidio for the the alleged

18

indifference to Mr. Jordan's health and safety;

(3) an Eighth Amendment deliberate indifference claim against Officers Dillard, Flemming and York; Acting Warden Perez and Lieutenant Bowers; and RN Dawn and LPN Trista for alleged indifference to Mr. Jordan's mental health and medical needs;

(4) an Eighth Amendment excessive force claim against Lieutenant Wilson, and Officers Dillard, Brown, York, Pendleton, Berard, Kravies, Silva, Fiore, Biegaj, Serrano, Werner, and Servidio, LPN Trista, and RN Dawn;

(5) a Fourth Amendment claim against Officers Lieutenant Wilson, Officers Berard, Kravies, Silva, Fiore, Biegaj, Serrano, Werner, and Servidio, LPN Trista, and RN Dawn; and

(6) state law assault and battery claims against Lieutenant Wilson, and Officers Silva, Fiore, Serrano, and Werner.

All other claims are **DISMISSED**.

(7) The Clerk of Court shall verify the current work address of Acting Warden Perez, Lieutenant Wilson, Lieutenant Bowers, Correction Officers Dillard, Flemming, Werner, York, Brown, Pendleton, Berard, Kravies, Fiore, Silva, Servidio, Serrano, and Biegaj, LPN Trista, and RN Dawn, with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint to them at their confirmed addresses by **November 22, 2024**, and report on the status of the waiver request by **December 6, 2024**. If a Defendant fails to return the waiver request, the Clerk of Court shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that Defendant, and that Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(8) The Clerk of Court shall send a courtesy copy of the Complaint and this Order to the

DOC Office of Legal Affairs.

(9) Defendants shall file a response to the Complaint, either an Answer or motion to dismiss, by **February 7, 2025**. If Defendants choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. Defendants may also include any and all additional defenses permitted by the Federal Rules.

(10) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by **June 13, 2025**. Discovery requests need not be filed with the Court.

(11) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(12) All motions for summary judgment shall be filed by **July 18, 2025**.

(13) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(14) If Mr. Jordan changes his address at any time during the litigation of this case, Local Court Rule 83.1 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Mr. Jordan must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Jordan has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or defense counsel of his new address.

(15) Mr. Jordan shall utilize the Prisoner E-filing Program when filing documents with

the Court. Mr. Jordan is advised that the Program may be used only to file documents with the

Court. Local Court Rules provide that discovery requests are not filed with the court. D. Conn. L.

Civ. R. 5(f). Therefore, discovery requests must be served on Defendants' counsel by regular

mail.

 

      **SO ORDERED** at New Haven, Connecticut, this 25th day of October, 2024.

 

                         /s/ Victor A. Bolden

                         VICTOR A. BOLDEN

                         UNITED STATES DISTRICT JUDGE